May it please the Court. Thomas Sprankling for Plaintiff Mr. Jimmy McDonald. I'd like to reserve three minutes for rebuttal. You could try. Mr. McDonald filed this suit against prison officials after first he was assigned to an upper bunk despite having a serious medical condition that entitled him to a lower bunk, and second, after he fell out of that upper bunk, seriously injuring his ribs and his spine. Your client had a trial. Yes he did, Your Honor. And the jury found against him. That's correct. So the facts are the facts, but you have to focus on what was wrong with what happened below. That's right, and the Magistrate Judge in this case made three fundamental errors in trying the case, and that's the vouching issue, the appointment of counsel issue. Is there a vouching doctrine in civil cases? I have always had my mind associated with criminal cases. I'm not saying it doesn't exist, it's just sort of, I was a little surprised that it would be applied in a civil case. Is it because the, do you think it applies in all civil cases? Is it because the government is on the other side? I mean, what's the? Well, Your Honor, at a similar cases, improper statements made in closing argument can require rehearsal even in civil cases. We think that in this case, the fact that there was a government attorney arguing the case who made our identity known to the jury made the vouching particularly egregious. But we would argue that under the general rule. Well, if it's improper, the question is, as I understand the vouching doctrine, it's elaborated in most cases. It is, you've got the prosecution, and when a prosecutor does something that amounts to vouching, he is essentially putting the power of the State or the prestige of the State behind the particular witness. And that's unfair because you're dealing with a criminal defendant and the criminal defendant's rights. I'm just not sure that it's improper in civil cases for lawyers to do things that – I mean, there are certainly some things that a prosecutor can do in a criminal case that a civil lawyer could do. Your Honor, the right arises from the due process clause, so it is a right that applies to both civil and criminal litigants as it discusses the obvious. Has this Court ever applied it in a civil context? Yes, in an unpublished decision, in the SEC v. Gowers decision. Well, did it apply it or did it presume it applied and decided in that case there wasn't a problem? We read it to say that it applied it. I understand how you read it, but you're familiar with this Court's memorandum of dispositions. And it's not unusual for a court, this Court, to take the easy route to a result and not deal with the hard question. In that unpublished decision, there was no discussion as to the wisdom or merit of the rule that it would apply in a civil context. It simply said what happened here wasn't vouching, applying the criminal test for what's vouching. So I go back to the question. I mean, your brief properly explores the universe and gives us a Seventh Circuit case, but I don't see anything there that suggests, published or unpublished, that the Ninth Circuit has ever articulated the view that it applies in the civil context. Is that the case? Well, with respect, Your Honor, the Gowers Court could have said, we are assuming for the sake of argument that the vouching doctrine applies here, and then go on to make its ruling. It could have, but it just said it's not vouching. It didn't affirmatively say vouching does apply in the civil context. So do we have anything, and if we don't, how can we call it plain error? So I think this takes us back to the Byrd v. Glacier rule, which has been established since the early 2000s, and we match that up with the Comb and the Witherspoon case, which the language in those cases are almost identical to those used by the defense counsel, who's a deputy assistant attorney general in this case. Combining Byrd plus Witherspoon and Combs gives us a well-established doctrine that certainly the California attorney general's office was aware of since the years ago. It sounds like you're taking a pretty lengthy detour and then trying to call that person a trial judge sitting there, minding his or her own business, who was the trial judge here. I guess her own business is supposed to have picked up on and interjected when defense or your client didn't make any objection, inject herself into a closing argument. It doesn't happen very often, so why should the judge have said, oh, my God, that's vouching, and that's not appropriate in this case, and I should interrupt? Well, Your Honor, in fact, the judge did interject herself in the closing argument. It was Mr. McDonald's closing argument, and she was concerned about his statements giving argument to the jury or evidence to the jury. So she did just demonstrate that she was willing to issue a curative instruction in the middle of someone's closing argument. It just wasn't defense counsel's. More broadly, this has been cited in two published versions. Was that upon objection? I'm not sure, Your Honor. Even if we were to assume that the vouching doctrine applies in civil cases, where was there prejudice here? The prejudice, Your Honor, is the statement only occurs one time in the government and the AG's closing argument, and it's embedded in a series of statements where she's going through the evidence and pointing to other factors that would lead the jury to conclude or to come back with a verdict in favor of the defendants. That's correct, Your Honor. But this was why does this why was this so prejudicial? I don't It was only a 12-page closing statement, so it's a very short closing statement. Two pages of that were dedicated to burnishing defendant's credibility. And at the end of the day, this came down to essentially a swearing contest between defendants who are prison guards and Mr. McDonald and his inmate witnesses. So credibility was key. It went directly to the knowledge issue. Mr. McDonald didn't have much of a paper trail, so he was relying on his witness's  And anything that really added to that in this way in a very substantial way. Well, there was other evidence about causation. On the day of the incident, he was apparently had been drinking, correct? Your Honor, the record isn't quite clear on that point. He said some he's just said inconsistent things in his deposition in a trial. I would note that the magistrate judge actually Wasn't there also evidence that he wanted to be that he wanted to share a cell with the particular inmate? And to do that, he had to be on the upper bunk? There was evidence addressed on that point. But, Your Honor, just to go back to your original question, too, I just want to make clear that the magistrate judge actually fielded a Rule 50 motion at the very end of trial. It was on punitive damages, but encapsulated within that motion, she concluded that there was enough evidence for a reasonable jury to conclude that Mr. McDonald had made a claim and fined on that fact. So there was evidence in the record that reasonable jurors could have relied upon. But I do want to switch briefly to the vouching doctrine or to the appointment of counsel issue before I run out of time and just address two quick points. The test is, of course, two prongs that are viewed together, likelihood of success on the merits and difficulty in presenting one's case. And I would refer to your Honor's to the fact that Mr. McDonald went to trial in this case. And that is exceedingly rare for a pro se prisoner litigant. If you look at the Ninth Circuit statistics from 2013 to 2014, about 1 percent of these cases made it to trial. We can also look to the fact that if he had had an attorney at trial, he would have had a chance to object to the vouching when it occurred. So there was, you know, an attorney would have made a significant change in this context. And finally, Your Honor, is to discuss, I would also point out that, I'll slow down. I would also point out that, I was still on the, I still, are you still on the appointment of counsel? Yes. Issue. There were six motions. That's right. Does that count? Does that matter? There were six? There were six motions. We would ask this Court to look at the last motion that was filed after summary judgment was granted. But yes, there were six motions. Summary judgment was denied. Excuse me. Summary judgment was denied. Right. The judge found a tribal issue a fact. The case had to go to trial. We'd have to find abuse, pretty serious abuse of discretion in not granting a, how would we write this? If you were, let's say, a law clerk, how would you write, draft an opinion distinguishing this case from the hundreds of other cases that must have motions for trial? Eastern, this is from the Eastern District? Eastern District. Yeah. I, there are prisons in the Eastern District, and I'm guessing that the judges there get a lot of motions. How would you, how would one write an opinion in this case to say your client, there was an abuse of discretion in your client's case, and it doesn't cover every other prisoner who wants a lawyer? Yes, Your Honor. First, as I mentioned, the trial and the fact that very, very, very few of these cases make it to trial. Additionally, I would point to the likelihood of success. Three different judges found that Mr. McDonald had sufficient merit to his claims to proceed on the path to trial, Judge Wenger, Judge O'Neill, and Judge Oberto. I would also point to the fact that Mr. McDonald has a seizure condition. He had difficulty presenting evidence at trial, as you can see from the papers we cited in our reply brief. Defendants actually cited 10 new motions in their response, and none of those motions were actually granted. He had significant trouble presenting his claims at trial. So I think that when you look at all those things together, you can find enough here to make his claim. One issue, and I know you'd like to save some time for rebuttal, but can you address the third issue, the excluded evidence? Certainly. How? I mean, the judge said this is not tied in. There's no evidence that these witnesses, I'm sorry, this declarant, or the guard who signed off on the car had any communications with defendants. It seems both plausible and well within the realm of the district charge's discretion, right? What's your best argument on that? Certainly. Those kind of issues go to the weight of the evidence rather than admissibility. Admissibility is, of course, an extremely low bar. It's any tendency to show that it's connected to a material issue in the case. And in fact, defendants made similar arguments that you just raised before the judge, and the judge said, no, that goes to weight. So we would say that DeFrance is an officer, works in the prison. There's actually testimony from an inmate named Rickard that when he was asked by defense counsel whether DeFrance, who was walking through the cells, monitoring the cells, he said, my best guess would be DeFrance. But the fact is, and he was also in Mr. McDonald's prison cell sufficient to assign him to another bunk in August 2005. So he's clearly in the same vicinity as these guards. It shows that someone in the prison administration had some knowledge of Mr. McDonald's condition just six months before he fell. Didn't the judge ultimately let that document in for a limited purpose, though? For a limited purpose. Did she instruct the judge, the jury, that it was they could only consider it for that limited purpose? Do you remember? Not that I'm aware of. So all the jury knew they could consider it for anything, right? That's possible. Okay. Thank you. Thank you. May it please the Court, Nia Nguyen for defendants' appellees. Extending the vouching rule to the civil context is inappropriate because prosecutors have special restraints and responsibilities that simply don't apply to civil attorneys. And it's unnecessary because there are existing rules in place to govern the conduct of civil attorneys in the civil context. The civil — the vouching rule stems from the concern that the prosecutor knows something more and can wink and a nod to the jury to say, I know stuff that you don't know and you can trust me on this on the government. And aren't there some of the same concerns in a case where the defendants, as in this case, are government officers and even if it wasn't told to the jury, it wouldn't be a tough inference to believe that either the attorney is being provided by the government, is from the AG's office, or has been communicating with people within the government to find out about the case and might have outside information to bear on it? Different worlds, Your Honor. In the criminal context, when law enforcement officers testify, they are a part of an investigation and there appear to be disinterested witnesses seeking to uncover the truth. In the civil context, the tables are turned. It's the officers who are the accused. They're accused of violating someone's constitutional rights and, you know, subject — The notion of a cover-up is not unheard of in government. Well, but, Your Honor, in the civil context, you know, officers have every right, and it's just as important as plaintiff's right to prosecute this case. The officers have a right to also defend against those charges, and so they should be given wide latitude to, you know, present their case and to fashion closing arguments to say, you know, you should believe my story and not plaintiff's story. I have a hard time believing that something that's improper in the criminal context is perfectly okay to do in the civil context. I mean, we have said that this kind of argument, I mean, this specific kind of argument, saying you got to sort of believe that the officer wouldn't lie because he could lose his job, he could prosecute it, this very kind of thing is — is — is error in — in the criminal context, but it's perfectly okay in the civil context. I have a hard time believing that. Well, Your Honor, to be clear, what defense counsel did below wasn't vouching. And, in fact, Judge Kuczynski, you stated in Settlegood that a closing argument that tracks the jury instructions cannot possibly be misconduct. And at ER 317, the district court instructed the jury in considering whether to believe a witness and how much weight to give it. The jury was asked to consider, among other things, the witness's interest in the outcome of the case and any bias or prejudice, the reasonableness of the witness's testimony in light of all the evidence, other factors bearing on believability. In her closing to the jury, she told the jury that, you know, you look at all the evidence. It's your job to decide who's telling the truth. You know, to — Well, she also conveys the idea that if these guys lie, they're subject to some sort of discipline or, as she said, they risk their jobs, they risk their livelihood, they risk their freedom. But, Your Honor, I mean, it's not vouching because it's based on the evidence or inferences from the evidence. There was testimony that, you know, they're all employed by Kern Valley State Prison. They've never been disciplined or reprimanded for failing to accommodate an inmate's housing restriction. There was testimony that there was no animosity or ill will between the plaintiff and the officers. The officers testified that they really didn't care where the inmates lived so long as they were compatible. And there was also testimony that there was good rapport between Officer Clark and the plaintiff. So that's all based on the evidence. But that isn't what was said. What was said is they risked their jobs, they risked their livelihood. Was there any evidence about that? Well, I think it's reasonable inference from the evidence that, you know, they're not going to risk their career just for those inmates, especially since, you know, they have really no reason to deny him a lower bunk movement. Had — I mean, I think what we're seeing right now is the additional statement that they're facing loss of jobs, facing perjury, and I didn't see any evidence that specifically spoke to that. Now, it may be an inference the jury could draw on its own, but here it was an argument being made by an attorney, not figure this out for yourself. It's here. You ought to listen to me about this because these are possibilities that weren't talked about during the evidence, but I'm going to talk to you about them now. But, Your Honor, jurors don't drop their common sense in the courtroom. I mean, if the officer committed misconduct, I mean, it's pretty obvious that they do subject themselves to some kind of discipline, even termination. So I think, you know, common sense applies there. But in any event, I mean, we are analyzing this under plain error. And in the sense of the court, the lawyer said, you know, the defendant is a church-going Christian, and he wouldn't lie because it's against his religion. And he, you know, could he make that argument? Well, that would be improper because it's extra record information. It's extra record information, too, about what the consequences are. I mean, take, for example, the question about perjury. How often are there prosecutions for perjury in the Eastern District for witnesses who are found to have lied in district court or who the jury finds them not credible by ruling against them? Is that a realistic possibility? Your Honor, I don't know. I don't know. I mean, I'm just sort of asking, or what are the chances, when is the last time a prison guard got fired for lying on the stand? Well, I don't know the statistics, but I do know that officers have been terminated for misconduct as to lying on the stand. I'm glad you know. I don't know. I'm glad you know. But, you know, this is the kind of stuff that is sort of thrown in, and it shows, you know, I'm a government lawyer. I know how these things work, and officers wouldn't do this. Now, this is very much like Witherspoon and Combs, except that it's a criminal case, except that those were criminal cases. Is there any material difference between the arguments? Well, in Combs, Your Honor, I mean, it was clearly personal vouching. It wasn't grounded in evidence, and what we're saying here is that defense counsels How about Witherspoon? What's that? Witherspoon. Oh, you're talking about Witherspoon? Yeah. I mean, there are two cases. United States v. Witherspoon, 4-10, 5-3, 11-42. Well, for Witherspoon, I mean, the closing in Witherspoon, the prosecutor said, you know, we, first of all, heard from Officer Kelly, Metro officer, credible officer. You know, I guess if you believe defense counsel, they must have lied at the scene. They must have lied to you. They must have lied to this judge. They must have lied to me. They must have lied to my agent. And then he goes on to say, I guess they're risking being prosecuted. The prosecutor also injected, you know, I don't believe regarding a witness, I don't believe that witness is truthful, and also brought up social ramifications for a guilty verdict. Now, you compare that to the closing statement in this case. You know, she emphasized that, look, based on all the evidence presented and the reasonableness of the evidence, you know, was it reasonable? She asked the jury, you know, look at defendant's motive and compare that to the plaintiff's. And I also want to emphasize that if you look at plaintiff's closing argument, you know, he vouched for himself and his inmate witnesses. You know, his theme was about being right. He vouched for his inmate witnesses, calling them good people who believed in right and wrong. And that's why they came forth with their testimony. He also said, I never lied. He said, I ain't never lied about any of this stuff. So I think, you know, in response to that, I think it's a fair response to say, you know, my officers, you know, what's their motive to lie? Look at theirs and compare it to plaintiff's. And I also want to emphasize. You're comparing, you're comparing, this was in the closing argument, plaintiff's closing argument? Correct. So plaintiff brought up the issue about believability and why my witnesses are believable and why you should believe them. It's part of the problem of having no lawyer, right? Did defendants oppose appointment of counsel? We usually don't, Your Honor. I don't remember there was an opposition. It's usually just between the plaintiff and the judge. But I also want to emphasize that, you know, the stakes are much higher in a criminal case and the courts are much more judicious in safeguarding an accused right. But when it comes to the civil context, especially when we look at plain error, Judge Pai, as you noted in C.B. versus City of Sonora, that the plain error standard in the civil context is similar to but stricter than the plain error standard in the criminal context. And the reason is, really, the stakes are lower in the civil context, and consequently, plain errors should encompass only those errors that reach the pinnacle of fault. And I don't think we have that here. One last comment before I run out of time. A jury verdict represents a great deal of work on the part of a good many people. And therefore, its collective judgment shouldn't succumb lightly to arguments made in the heat of the moment on the front lines of litigation the court should affirm. Thank you. Thank you. Counsel, we'll give you a minute for rebuttal. Just a few quick points. To discuss the Settlegood case, of course, Settlegood did not involve vouching of the kind in this case. It's inapposite on those facts and also because the vouching, the improper comments made more went to the style of the way that the attorney presented their argument rather than the substance. Regarding the comment about perjury and how perjury is common sense, that is exactly the tact that Judge Trott took in his dissent. And, of course, since that issue was presented to the circuit and Weatherspoon was rejected, it shouldn't be revived in this context. The argument about invited response, of course, was not raised in the brief whatsoever. And as Your Honor has suggested, it seems somewhat inapposite to compare pro se litigant statements that his witnesses are trustworthy guys to a statement by a government attorney saying there are professional and legal consequences that will occur if my witnesses are lying. On that note, if Your Honors have no further questions. Thank you. Thank you. The case is argued. We'll stand for a minute.
judges: Kozinski, Paez, Clifton